IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MITCHAEL L. MOORE**,                                   Civil Case No. 09-6034-KI

             Plaintiff,

    vs.                                                    OPINION AND ORDER

**COMMISSIONER SOCIAL SECURITY
ADMINISTRATION**,

             Defendant.


    Drew L. Johnson
    1700 Valley River Drive
    Eugene, Oregon  97405

    Linda S. Ziskin
    Ziskin Law Office
    PO Box 2237
    Lake Oswego, Oregon  97035

        Attorneys for Plaintiff


Page 1 - OPINION AND ORDER

Dwight C. Holton
United States Attorney
District of Oregon
Adrian L. Brown
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

David J. Burdett
Gerald J. Hill
Stephanie R. Martz
Terrye Erin Shea
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Mitchael Moore brings this action pursuant to section 405(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits ("DIB").  I reverse and remand the decision for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

**THE ALJ'S DECISION**

The Administrative Law Judge ("ALJ") found that Moore suffered from the severe impairment of lumbar spine degenerative disc disease.  Further, the ALJ found that Moore had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours during an eight-hour day; sit for six hours during an eight-hour day; occasionally stoop**;** and do occasional reaching and pulling with his upper extremities.

 Based on the above limitations, the ALJ concluded that Moore could perform his past work as a grade checker, and could also work as a seedling sorter, cashier II, and small products assembler II.

**FACTS**

Moore was 50 years old at the time of the ALJ's decision.  In the past, he worked as a green chain off-bearer, jointer operator, and a highway construction worker.  He alleges disability beginning on August 7, 2000, based on headaches, depression, anxiety, a cognitive impairment, a pain disorder, and back problems.  After his father died of a heart attack at age 14, he dropped out of high school and never obtained a GED.  Moore is not married, but raised three children and has a good relationship with all of them.  He raised one son as a single parent.  He has no problems with drugs or alcohol and has no criminal history.

In August 2000, Moore was injured when a four foot chunk of concrete weighing roughly 300 pounds fell about 4 feet from a backhoe scoop onto his head and upper back.  He was wearing a helmet, but was knocked unconscious and received numerous injuries.  He has not worked since that day.

This case is Moore's second attempt to obtain DIB and SSI.  He filed his DIB application on June 5, 2003.  He alleged that he became unable to work on August 7, 2000, due to the injuries sustained while working.  Moore did not, however, seek review of a May 30, 2003 decision denying his first application for disability benefits.  Therefore, Moore amended his alleged onset date to May 31, 2003 during a January 2006 hearing.  At the conclusion of the January 2006 hearing the ALJ and Moore's attorney agreed that additional testing was needed in order to reach a decision.  The second hearing took place in December 2006.  The record and the facts below focus on the period between the alleged onset date and the date of the last hearing.

Moore began physical therapy in May 2002.  At that time, he experienced constant pain in his back and neck.  In October 2002, Moore's physical therapist, Richard Costain, wrote, "Mitch has continued to work hard but cannot get beyond his current level of activity without significant increases in pain, muscle tightness and spasm . . . . Continued physical therapy with his current program will probably not improve his current status." Tr. 177.

On December 8, 2003, Moore had an MRI that showed "central disk extrusion at C3-4 which results in mild to moderate spinal stenosis . . . [and] a small C5-6 broad-based herniation is also present." Tr. 298.  In April 2004, Moore saw Dr. Michael Dorsen, who wrote in the chart, "His symptoms of neck pain have progressed in severity since [February] and he has been scheduled for decompressive surgery." Tr. 297.  On April 14, 2004, Dr. Dorsen performed surgery on Moore's upper spine to address his pain issues.

On January 4, 2005, physician's assistant Mark Williams evaluated Moore.  At that time, Mr. Williams had been treating Moore for over 18 months.  Mr. Williams diagnosed Moore with "chronic back pain and improved neck pain since recent surgery." Tr. 315.  He concluded,

Page 6 - OPINION AND ORDER

> At this point I do not feel he is going to be able to do any substantial, gainful work unless his back pain was to disappear. This definitely is a chronic condition. Given his age, his 9th grade education and manual labor work experience, it would probably be difficult for Mitch to land a job to support his family . . . . I feel his physical limitations are enough to consider him disabled.

Tr. 315. The same month, a doctor involved with Moore's care, Dr. Craig McNabb, wrote,

> Mitchael Moore is status-post spinal surgery for cervical stenosis, has continued to have pain and discomfort postoperatively, and continues to be unable to do any gainful employment for the past several months since his surgery. I do feel that he will probably have long-term disability secondary to his cervical stenosis and radiculitis. I think any activity in which he has to hold his arms out in front of him is going to be difficult to do and he definitely cannot do his previous job of road construction, which is too strenuous.

> As far as other manual labor, I do not feel that he will ever be able to perform this to any great degree. I do feel that due to the severe tightness of his upper thoracic spine and cervical spine, he will continue to have long-term pain and discomfort due to cervical radiculitis.

> At this point in time, I really do not have any other treatment recommendations. We have tried physical therapy, along with a combination of other medications, and none of them seem to provide him any long-term relief. I do feel that he is completely disabled and unable to work any gainful employment.

Tr. 325.

Aside from his physical problems, Moore also underwent psychological testing with a number of providers. In August 2003, licensed clinical social worker Gary Bredeweg diagnosed Moore with Adjustment Disorder with Mixed Anxiety and Depressed Mood. Mr. Bredeweg noted that Moore's diagnosis was primarily related to Moore's frustration at his inability to work or navigate the legal system and obtain financial support. In January 2004, Dr. Julie Redner, Ph.D. diagnosed Moore with Major Depressive Disorder, recurrent moderate, Adjustment Disorder with Anxiety, and Pain Disorder Associated With Both Psychological Factors and a General Medical Condition. Dr. Redner tested Moore's intellectual functioning and

noted that Moore had low average verbal abilities and that his written and mathematical abilities ranged from a 6th to 9th grade level. She also wrote, "Current cognitive test results are viewed as the lower limit of Mr. Moore's optimal abilities due to his pain and use of pain medication." Tr. 278. In March 2006, Moore underwent a 5-hour psychological evaluation performed by Dr. Douglas Smyth, Ph.D., who worked for Disability Determination Services. Dr. Smyth diagnosed Moore with a Cognitive Disorder, and concluded that the "etiology of cognitive symptoms is unknown, but the chronic and regular use of a prescription narcotic is strongly suspected." Tr. 370. He also diagnosed Moore with Generalized Anxiety Disorder and Chronic Pain Disorder.

On a typical day Moore wakes up at 6:30 a.m. to drive the children to school. After driving to school he goes back to bed until 11:00 a.m. Moore's elder son fixes many meals for the family, but Moore is also able to prepare simple meals for his children and for himself. He does some vacuuming, but usually has to stop after 30 minutes because the pain becomes unbearable. He walks between 1 and 2 miles per day, and during one period he took over his son's paper route in order to keep busy. He enjoys watching his children play sports, but is frustrated he cannot play with them. In sum, he is independent in most tasks of daily living, but must take frequent breaks due to his pain.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly developing vocational findings, (2) failing to factor non-severe impairments into the RFC, and (3) improperly rejecting lay witness testimony.

I.    Vocational Findings

Moore contends the ALJ and the Vocational Expert ("VE") made four errors regarding vocational findings that warrant remand and a finding of disability.  First, Moore argues that the VE concluded Moore could perform past work because he was still able to perform one aspect of a previous job.  Second, Moore contends the ALJ failed to give the VE a proper hypothetical. Third, Moore asserts the jobs identified by the VE cannot be performed by a person with Moore's RFC.  Fourth, the VE failed to state whether his testimony was consistent with the DOT.  The Commissioner "concedes that substantial evidence does not support the ALJ's findings that Plaintiff can return to his past work and perform other work," and requests remand for further development of the record.  Def.'s Br. 2.

A.    Past Work

Moore's most recent work was as a "Laborer, Grade Checker Hwy. Const."  Tr. 131. According to Moore, "[M]ost of the time, I was the grade checker, which consume [*sic*] of lazar [*sic*] and rod.  The rest of the time would consume [*sic*] of shoveling rock, exposing [*sic*] pipes in dirt, laying pipe, carrying fabric rolls, sometimes running bac-hoe [*sic*], roller, D-3 cat."  Id.  In this job he would carry a rod, a laser, a stand, and a shovel at all times, and he would use a jackhammer.

At the second hearing, the VE, who originally characterized the above position as a construction worker, said that he reviewed "additional documentation that was furnished with the file" and "it appears that the work was not really construction work so much as it was a grade checker . . . . It appears that some aspects of the job entail some grading which would be shoveling, although that was probably more to a medium work range."  Tr. 450.  Shortly

Page 9 - OPINION AND ORDER

thereafter, the VE said that based on the hypothetical provided by the ALJ, the claimant was probably limited to light work, but that the grade checker job was light work and the claimant would be able to perform the grade checker job.

Moore's testimony makes it clear that grade checking was only one of his functions while working on the highway construction crew, and that he also did heavier work as part of his job duties. The VE's analysis, which extracts one major job duty from a previous position, and considers the job duty as a position unto itself, is improper. The Ninth Circuit addressed this issue in Valencia v. Heckler, 751 F.2d 1082, 1087 (9th Cir. 1985), where it disagreed with the proposition that, "[I]f a claimant is unable to perform any of his past jobs, but retains the capability to perform a particular task associated with one of those jobs, the claimant is nonetheless able to perform his past relevant work." On the contrary, when a claimant can perform particular duties from a previous job, but could not do the job as a whole, the claimant should be found not able to perform past relevant work. See Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001).

Accordingly, the VE's conclusion that Moore's previous work was as a grade checker is improper. There is no question that Moore had to perform heavy duty job functions in the job in question, such as shoveling and using a jackhammer. In turn, the ALJ's conclusion that Moore could perform this past work is not supported by substantial evidence. The medical evidence is clear that Moore is no longer able to perform his job as a highway construction worker, as discussed below.

Page 10 - OPINION AND ORDER

B.    Vocational Expert Hypothetical

The second hearing in this case was conducted via telephone with plaintiff.  Rather than give the VE a hypothetical orally, the ALJ gave the VE documentation to review.    Moore argues that the ALJ was not sufficiently specific when he gave the VE hypotheticals, and thus the VE's conclusions are without evidentiary value.  According to Moore, with only some of the hypothetical limitations given orally, there is no way to know if the ALJ and the VE had a meeting of the minds regarding what limitations were being considered.  Therefore, argues Moore, a reviewing court has no basis upon which to determine whether the ALJ's vocational finding is based on substantial evidence.

When conducting the examination of the VE, the ALJ said, "[L]et me just start out with some – I think about four different hypothetical questions I'm going to give you here.  Let's see.  Okay, let me start with B28F."  Tr. 451.  Exhibit B28F is a Medical Source Statement of Ability to do Work-Related Activities, filled out by Dr. Kent Brewster.  Tr. 409.  It sets forth that Moore could lift or carry twenty pounds occasionally, ten pounds frequently, and could stand or walk six hours in an eight hour work day, among other things.  It also puts an "occasional restriction on reaching."  Tr. 410.  The ALJ told the VE to accept the limitations in the document, and keep in mind "that Mr. Moore is 50 years of age, and has this past work you've identified" and "a question of education."  Tr. 452.

For the second hypothetical, the ALJ asked the VE to consider exhibit B32F, which is a Physical Capacities Evaluation form filled out by physician's assistant Mark Williams.  It details that Moore can lift ten pounds frequently, eleven to fifty pounds occasionally, sit, stand, or walk for three to four hours in an eight-hour workday, never bend or reach, and occasionally squat

Page 11 - OPINION AND ORDER

crawl and climb.  The ALJ added that the VE should assume the same age, education, past work

as in the previous hypothetical, and that any work has a sit-stand option.  The ALJ asked the VE

to assess past work based on those factors, and the VE stated that based on the hypothetical, the

claimant could not perform past work.  The VE stated that the claimant could still work as an

assembler, a seed sorter, or a cashier.

For the third hypothetical, the ALJ kept the limitations from the second hypothetical, but

added in that Moore would need to be able rest for three hours in an eight-hour workday.  The

VE testified this would limit the claimant to half-time work.

The ALJ did not give a fourth hypothetical.

Hypothetical questions posed to a vocational expert must specify all of the limitations and

restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the

hypothetical does not contain all of the claimant's limitations, the expert's testimony has no

evidentiary value to support a finding that the claimant can perform jobs in the national economy.

Id.

Here, the transcript of the hearing, together with the exhibits specified by the ALJ,

provided sufficient information for me to determine what limitations and restrictions the VE

considered when making his findings.  Although unorthodox, the ALJ's approach to the

hypotheticals is not in itself reversible error.

C.    Consistency with the Dictionary of Occupational Titles

Moore argues that the ALJ cannot rely on the VE's testimony because he failed to ask

whether it was consistent with the Dictionary of Occupational Titles ("DOT").  He also argues

that the DOT description of the three jobs identified by the VE includes the need for abilities that are precluded by the hypothetical.

In his decision, the ALJ wrote, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 34. Yet the record shows that the ALJ did not ask the VE if his testimony conflicted with the DOT. An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first asking if the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

Although in some circumstances such an omission could constitute harmless error, in this case the VE's testimony and the ALJ's findings were not, in fact, consistent with the DOT. For example, in each hypothetical, the claimant was restricted to reaching only occasionally or not at all. In fact, the ALJ included in his decision a finding that Moore's RFC included a limitation to only occasional reaching. Yet the three jobs identified by the VE and the ALJ all require more than occasional reaching. The seedling sorter job requires a worker to be able to reach "frequently." Dictionary of Occupational Titles, 451.687-022 (Fourth Ed. 1991, available at 1991 WL 673510). The cashier II job also requires frequent reaching. Id. at 211.462-010 (available at 1991 WL 671840). The assembler of small products II job requires constant reaching. Id. at 739.687-030 (available at 1991 WL 680180).

The ALJ's and VE's error is significant and renders the VE's testimony without evidentiary value. Dr. McNabb specifically noted that "any activity in which [Moore] has to hold his arms out in front of him is going to be difficult to do." Tr. 325. This error alone is sufficient to warrant remand.

II.    Residual Functional Capacity

Moore argues that the RFC was incomplete because the ALJ failed to factor in the effects of his non-severe impairments.  Moore points specifically to Dr. Redner's finding that Moore had a GAF score of 49, and argues that the ALJ should have included a limitation for his cognitive impairments, and limited him to simple work.

A person's GAF score describes his psychological, social, and occupational functioning, using a single measure.  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32-34 (Fourth Ed. Text Revision 2000).  A GAF score of 49 indicates serious symptoms, or any serious impairment in social, occupational, or school functioning.  Id. at 34.  There is no case law, however, to support the proposition that a GAF score of 49, alone, warrants a limitation to simple work.

I agree, however, that the ALJ improperly failed to factor Moore's cognitive disorder into the RFC.  Even non-severe impairments must be considered in formulating a claimant's RFC.  20 C.F.R. § 404.1545(e).

Substantial evidence indicates that Moore's long-term use of prescription narcotics to treat his pain limited his level of cognitive functioning.  In particular, substantial evidence in the record indicates Moore had memory problems.  He testified that he would be driving somewhere and would forget his destination.  Dr. Redner noted that "his immediate recall was in the mildly impaired range."  Tr. 277.  In addition, Dr. Smyth wrote, "Modest cognitive slippage was noted during intellectual and memory testing."  Tr. 369.

Although Moore's cognitive problems may not constitute a severe impairment, they are still significant and the ALJ should have factored the impairments into Moore's RFC. In failing to factor Moore's cognitive problems into the RFC, the ALJ erred.

III.    Lay Witness Testimony

Moore argues that the ALJ did not address all the lay evidence provided by his friends and family. Moore's mother, brother, sister, son, and ex-partner provided lay evidence about Moore's condition. The ALJ summarized the evidence offered by each lay witness in his decision. The ALJ then analyzed the lay witness testimony as a whole, when compared to the medical record and Moore's own testimony, and found that inconsistencies "limit[ed] the credibility of the lay evidence." Tr. 32. The ALJ noted, "Weight is only given to the lay evidence to the extent it supports that claimant can do some work." Tr. 32.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, not only did the ALJ fail to give specific, germane reasons for discounting the testimony of each separate lay witness, he also failed to address the memory problems that

virtually all of the lay witnesses discussed.  Based on the record, I cannot conclude that no

reasonable ALJ could have reached a different disability determination if the lay witness

testimony had been fully credited.

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court

should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a

determination of disability can be made, and it is clear from the record that the ALJ would be

required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied,

remand for payment of benefits is warranted regardless of whether the ALJ might have

articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79

(9th Cir.), cert. denied, 531 U.S. 1038 (2000).

Here, if the evidence of Moore's physical limitations and his cognitive impairments were

properly credited, any ALJ would be required to find Moore disabled.  There is no question that

he cannot perform any sort of physical work, and the medication he takes to manage his constant

pain leaves him forgetful and cognitively impaired.  Moreover, Moore, a hard worker and person

of excellent character, was injured almost exactly one decade ago.  Remand for development of

the record would create further delay in the final adjudication of a case that should have been

resolved years ago, and would constitute an unacceptable outcome.

**CONCLUSION**

The decision of the Commissioner is reversed. The case is remanded for a finding of

disability.

IT IS SO ORDERED.

Dated this _____9th_____ day of August, 2010.


_____/s/ Garr M. King_____

Garr M. King
United States District Judge